Roscoe L. JONES, et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 89–604.

District of Columbia Court of Appeals.

Argued Nov. 14, 1990.

Decided Dec. 4, 1990 *.

Jerome P. Friedlander II, Arlington, Va., for appellants.

Martin B. White, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, Washington, D.C., for appellee.

Before STEADMAN, SCHWELB and WAGNER, Associate Judges.

SCHWELB, Associate Judge:

After appellants failed for several years to pay real estate taxes on an apartment building in northwest Washington, D.C. which they then owned, the property was sold at a tax sale. Appellants filed suit in the Superior Court to set aside the sale, alleging that there had been a number of constitutional and other shortcomings in

* The decision in this case was originally issued as a Memorandum Opinion and Judgment on De-cember 4, 1990, and is being published upon the court's grant of appellee's motion to publish.

the proceedings. The District filed a motion for summary judgment, which was granted by the motions judge. We affirm.

## I

■ Appellants challenge the constitutionality of the District's statutory scheme governing tax sales of real property. *See* D.C.Code §§ 47–1301, –1319 (1990). Relying on *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), in which the Supreme Court invalidated a comparable scheme [1] in the State of Indiana, they claim that the sale was unconstitutional because the holders of mortgages on the property did not receive adequate notice.

In *Mennonite*, however, the complaining parties were the mortgagees, who claimed that they had been denied the notice which they had a constitutional right to receive. In the present case, appellants' complaint relates to the lack of notice to third parties who are strangers to the suit. Appellants have proffered no facts in their opposition to the District's motion for summary judgment which would support the notion that they would have received any concrete benefit if notice had been provided to the mortgagees prior to the tax sale. In the absence of injury to themselves fairly traceable to the alleged constitutional violation, appellants lack standing to complain of it; they cannot assert the constitutional rights of parties not in privity with them,[2] who have articulated no grievance. *United States v. Payner*, 447 U.S. 727, 731–32, 100 S.Ct. 2439, 2443–44, 65 L.Ed.2d 468 (1980); *Singleton v. Wulff*, 428 U.S. 106, 112–18, 96 S.Ct. 2868, 2873–76, 49 L.Ed.2d 826 (1976). Accordingly, we agree with the motions judge that appellants lack standing to assert this claim.

## II

■ Notice of the tax sale in this case was published once in each of two newspapers, the Washington Post and the Afro–American. Appellants claim that the sale was defective because the applicable statute and regulation should have been construed to require two publications in each newspaper. We disagree.

The applicable statutory provision which contains the publication requirement is D.C.Code § 47–1301 (1990). That section reads in pertinent part as follows:

> ... The notice of sale and the delinquent tax list shall be advertised according to regulations prescribed by the Council of the District of Columbia in not less than 2 general circulation newspapers, published in the District, once every 2 weeks or more frequently.

Appellants contend that the words "published in the District, once every 2 weeks or more frequently" refer to the notice, rather than to the newspapers in which the notice is published, and that the statute therefore requires a total of four publications. This syntactically strained construction is at odds with the regulation in effect at the time of publication and with pertinent legislative history.

The sale was advertised in 1984. At that time the applicable regulation, 9 DCMR § 316.2 (1984), specified that

> [t]he notice of sale ... shall be advertised *once* in two (2) general circulation newspapers published once every (2) weeks or more frequently.

(Emphasis added). The italicized language leaves no doubt that a single publication in each of two newspapers is adequate.

Since § 47–1301, quoted above, provides that the notice of sale is to be advertised "according to regulations prescribed by the Council of the District of Columbia," and since the advertising here complied with the regulation then in effect, we have no doubt that it also complied with the statute. This is not a case like *Tenants of 738 Longfellow St., N.W. v. District of Columbia Rental Housing Comm'n*, 575 A.2d 1205, 1213–14 (D.C.1990), in which we

---

1. In light of our holding that appellants lack standing, we do not reach the question whether the notice provisions in the District's statute can be reconciled with *Mennonite*.

2. As the Court noted in *Mennonite*, 462 U.S. at 799, 103 S.Ct. at 2711, there is no privity of interest between property owner and mortgagee.

found an irreconcilable conflict between statute and regulation.

Pertinent legislative history is also consistent with the District's position. The 1984 regulation was amended in order to bring it into conformity with D.C.Law 4–81, D.C.Code § 1–1621 (1987), which had been enacted in response to the demise of the *Washington Star.* According to the legislative report on the 1984 regulation, the

> Council enacted D.C.Law 4–81, Newspaper Publication Act of 1981 to provide that the tax sale must be published *once* in two general circulation newspapers, and defined a general circulation newspaper as one 'published in the District, once every two weeks or more frequently.'

(Emphasis added). *Report of the Committee on Finance and Revenue on Bill 5–58, Real Property Tax Sale Regulations Amendment Act of 1983* (Feb. 10, 1983). The quoted language removes any doubt that the phrase "once every two weeks" was intended to refer to the frequency with which the newspapers, and not the notice of sale, were required to be published.[3]

### III

 Appellants contend that if the statute and regulations are construed as requiring only one publication of the notice of sale in each of two newspapers, then such notice is constitutionally inadequate. They cite no authority for this proposition, and we hold that they have failed to overcome the presumption of constitutionality which attaches to legislation enacted by the popularly elected branches of government.

---

**3.** Appellants point out that the 1982 and 1986 versions of 9 DCMR § 316.2 provided that "a notice of sale ... shall be advertised once every two weeks or more frequently in two (2) general circulation newspapers in the District." Concededly, the literal meaning of these versions (which the District claims to have resulted from a typographical error) lends some support to appellants' theory. The short answer to their claim, however, is that it was the 1984 regulation which was in effect at the time the sale was advertised.

Section 47–1301 contemplates the issuance of regulations which spell out the publication requirement. Assuming, *arguendo,* that in 1982 and 1986, the regulations then in effect required

*Hornstein v. Barry,* 560 A.2d 530, 533–34 (D.C.1989) (en banc).

### IV

 Appellants also contend that they were denied the equal protection of the laws, *see Bolling v. Sharpe,* 347 U.S. 497, 498–99, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954),[4] by the District's application of D.C. Code § 47–1307 (1990). Section 47–1307 requires the District to file a report of property sold at a tax sale with the Recorder of Deeds, except in the case of property "sold to the District of Columbia." Since no purchaser bought appellants' property and it was bid off by the District, the District filed no report pursuant to § 47–1307. Appellants contend that this failure denied them equal protection because landowners whose property is purchased by persons other than the District receive notice of the tax sale superior to that received by appellants, in that the former group of landowners benefit from the reporting to the Recorder of Deeds of sale of their properties.

In the present case, appellants received actual notice by mail of the tax sale, and it is difficult to see how they suffered any injury, either in relative or absolute terms, from the failure to report the sale to the Recorder of Deeds. It is also questionable whether § 47–1307 can properly be characterized as treating similar classes of persons unequally. Section 47–1307 applies to all property sold at a tax sale and simply requires different post-sale procedures depending on whether property was in fact

---

more frequent publication than did the statute or the 1984 regulation, this has no effect on the present controversy. It is useful to note that the 1986 edition of 9 DCMR § 316.2 was subsequently corrected in 1988. *See* 35 D.C.Reg. 6958 (1988). The published erratum notice brought the text of the 1986 version into substantive conformity with the text of the 1984 version.

**4.** Although the Fifth Amendment, unlike the Fourteenth, contains no equal protection clause, the Court held in *Bolling* that the earlier Amendment's due process provision renders equal protection analysis applicable to the District of Columbia.

**1323**

purchased or merely fictionally "sold" to the District.

Finally, assuming *arguendo* that equal protection analysis can properly be applied to § 47–1307, the District had a rational basis for the procedural distinction which it drew. *Cf. United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–79, 101 S.Ct. 453, 459–61, 66 L.Ed.2d 368 (1980). The language of § 47–1307 makes it apparent that it was designed in substantial part to provide a record of the person to whom tax sale property is sold, the sale price, the amount paid, and the surplus over the amount of taxes owing. D.C.Code § 47–1307(a). These considerations are inapplicable where property is bid off by the District, and there is less need, if any need, for a § 47–1307 report in cases where property is "sold" to the District and not to an actual purchaser.

V

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*